**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.:  1:17-cv-23408-GAYLES/OTAZO-REYES**

JANE DOE,

     Plaintiff,

vs.

UNIVERSITY OF MIAMI,

    Defendant.

_____/

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, JANE DOE, by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 56, hereby files this Motion for Partial Summary Judgment as to Count I – Violation of Title IX, 20 U.S.C. § 1681(a), and states as follows:

**PRELIMINARY STATEMENT**

The University of Miami violated Title IX as a matter of law.  Title IX of the Education Amendments of 1972 and its implementing regulations "prohibit discrimination on the basis of sex in education programs or activities operated by recipients of Federal financial assistance." *See* U.S. Dep't of Educ., Office of Civil Rights, Dear Colleague Letter at p. 12 (Apr. 4, 2011) attached hereto as **Exhibit A.**  More specifically, "when a student sexually harasses another student, the harassing conduct creates a hostile environment if the conduct is sufficiently serious that it interferes with or limits a student's ability to participate in or benefit from the school's program. The more severe the conduct, the less need there is to show a repetitive series of incidents to prove a hostile environment, particularly if the harassment is physical. Indeed, a single or isolated incident of

sexual harassment may create a hostile environment if the incident is sufficiently severe.  For instance, a single instance of rape is sufficiently severe to create a hostile environment." *Id.* at 3. Per the letter, which was applicable during the relevant time period, "[i]f a school knows or reasonably should know about student-on-student harassment that creates a hostile environment, Title IX requires the school to take immediate action to eliminate the harassment, prevent its recurrence, and address its effects." *Id.* at 4.

Title IX funding recipients are specifically required to investigate and provide adequate remedies in response to sexual harassment.  *See, e.g.*, *Williams v. Bd. of Regents of the Univ. Sys. of Ga.*, 477 F.3d 1282 (11th Cir. 2007).  When a school becomes aware that a hostile environment exists due to sexual harassment, especially sexual violence, it is required under Title IX to protect the victim, to stop the harassment, to prevent future harassment, and to ensure the victim does not suffer adverse effects that would prevent her from having an academic experience free from discrimination.  Importantly, sexual violence is the most severe form of sexual harassment.  *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 692 (7th Cir. 2010).  Immediate action is necessary because sexual harassment creates a hostile environment that subjects the target of the harassment to discrimination, ultimately excluding the student from full participation in the educational program, and denying the student the benefits of his or her education.

In determining whether the University of Miami was deliberately indifferent in depriving Jane Doe access to educational opportunities, the Court must determine that the University was "clearly unreasonable in light of the known circumstances" in failing to take corrective action despite having actual knowledge of harassment, thereby causing Jane Doe to undergo or be vulnerable to the harassment.  *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 631 (1999).

The University of Miami was clearly unreasonable in light of the known circumstances in the following ways: (1) University staff members and faculty received insufficient or ineffective training regarding the University's Title IX obligations to stop, prevent, and remedy sexual harassment, including rape and stalking; (2) Residential Life professional staff members failed to immediately report to the Title IX Coordinator Jane Doe's first report that she was a victim of sexual harassment, causing the University to fail to properly respond to Jane Doe's first report and thereby exposing Jane Doe to subsequent harassment, including physical violence, which she in fact suffered just days later; (3) the No-Contact Order issued to the Assailant was done rather informally and not in accord with University or industry standards; (4) the University did not promptly respond, substantively investigate, or conduct a risk-threat assessment in response to Jane Doe's report that the Assailant was violating the No-Contact Order; (5) the University failed to assess for and implement an interim suspension of the Assailant after Jane Doe made her initial reports in light of the escalating behavior which presented a clear risk of violence; (6) the University failed to conduct a prompt investigation in the hands of physically absent and inattentive Title IX coordinator Dean Lake, forcing Jane Doe to endure the fear of Assailant's continued presence on campus amid repeated instances of stalking, particularly after Thanksgiving Break; (7) the University failed to provide Jane Doe an effective remedy to her academic challenges, including by forcing her to discuss her situation directly with faculty in order to seek, work out logistics of, and implement flexibility in her coursework, and by refusing to inform her she may be eligible for disability accommodations through the Office of Disability Services; and (8) the University deliberately scheduled the disciplinary hearing so that it interfered with the school final exam period, and then unreasonably delayed in sanctioning Assailant through expulsion, without regard to the obvious and foreseeable result that Jane Doe's end-of-semester

academic performance would suffer a significant negative impact. *See* Expert Report of Kimberly A. Pacelli, attached hereto as **Exhibit B**.

To highlight the egregious nature of deliberate indifference of the University of Miami, the school intentionally exposed Plaintiff—a victim of rape, stalking, and physical assault by another student—to discrimination and prevented her from fairly accessing educational opportunity by scheduling the disciplinary hearing at the beginning of final exams, causing her to expend time, attention, and tremendous emotional energy on the hearing at an already immensely stressful time in the academic life of any college student, and by subsequently delaying by nearly a week during the final exam period its decision to sanction the Assailant through expulsion, even after having found him responsible for multiple serious offenses, including sexual assault and battery, during which time Jane Doe was forced to live in ongoing fear for her safety due to Assailant's continued presence on campus, to the obvious and foreseeable significant detriment of her end-of-semester academic performance.

## FACTUAL BACKGROUND

Plaintiff incorporates herein her Statement of Undisputed Facts DE 69.  On or about August 22, 2013, Plaintiff was raped by a male student ("Assailant") attending the University of Miami ("the University") with whom she had been involved in a romantic relationship.  DE 69 Ex. A at 64:14–66:01, 67:16–74:13, 75:17–77:24. Approximately one to two weeks later, Assailant arrived uninvited and unannounced at Jane Doe's apartment building in the middle of the night.  *Id.* at 87:12–21; DE 69 Ex. B at 164:05–16.  He gained entry to the building and banged on the door of Jane Doe's apartment.  DE 69  Ex. A at 87:22–24.  He acted "obnoxious and aggressive," banged on the walls, and seemed intoxicated.  *Id.* at 88:09–14, 120:11–12.  Plaintiff's trauma from the rape and Assailant's ongoing harassing behavior caused Plaintiff tremendous anxiety and

depression to the point that she was unable to focus on her academic pursuits.  On Wednesday, September 11, 2013, Doe reported Assailant's behavior to his Hall Director, Oscar Vasquez ("Mr. Vasquez"), in the Residential Life office. *Id.* at 118:11–119:04, 119:25–120:07.Vasquez failed to immediately inform the Title IX Coordinator of Plaintiff's report.

On Friday, September 13, 2013, Jane Doe encountered Assailant while she was attending a party with a group of friends at a fraternity house on the University's campus.  *Id.* at 122:14–123:09.  Assailant became extremely upset, aggressive, and ultimately physically pushed Plaintiff causing her to fall.  *Id.* at 123:10–124:09.  Assailant caused such a scene at the party by assaulting plaintiff, crying, punching a wall, threatening to walk in front of cars, and repeatedly calling and texting Jane Doe that several of the fraternity brothers intervened to for Jane Doe's safety, ultimately physically subduing Assailant and removing him from the party.  *Id.* at 124:10–18; DE 69  Ex. B, William A. Lake Dep., 165:11–24.

Beginning on September 16, 2013, the University's Dean of Students Office initiated a Title IX investigation that continued until the end of the Fall 2013 semester.  On September 17, 2013, after meeting with Associate Dean Lake and case manager Nicole Abramson, Plaintiff reached out to Abramson expressing that she was having a hard time getting an immediate appointment in the counseling center, that she was missing her classes, and stating, "I'm trying hard to keep up with all of my commitments and school, but I am actually just not able to. Please advise me what to do."  DE 69 Ex. I at 83:11-85:08.

During the course of the investigation, Plaintiff continued to request academic accommodations from the Dean of Students Office, but beyond notifying her instructors that Plaintiff was dealing with a serious issue, the Dean of Students Office impermissibly placed the onus on Plaintiff to follow up individually with her instructors to work out any necessary

accommodations.  DE 69 Ex. A at 243:14-245:04.  The University not only neglected to advise Plaintiff that she could pursue academic accommodations through the University's Office of Disability Services, but she was directly instructed that she did not have a real disability, nor would she qualify for any such accommodations.  *See* DE 69 Ex. A at 322:22-323:4 (Plaintiff testified, "I was told by Nicole Abramson just because I was raped doesn't entitle me to any kind of special accommodation. The Center for Students with Disabilities is for students with physical disabilities, like if they are in a wheelchair, not for people like me.  So, I was told there was no way for me to do this.").

On October 2, Jane Doe spoke to Abramson by phone and inquired about the status of the investigation and was informed that Dean Lake was still investigating "and the case would resume when he returned from his leave."  DE 69 Ex. J, Copy of Jane Doe's Case Management for Title IX case against Assailant containing Abramson's dated case notes.  Dean Lake traveled to Japan in October 2013 in the middle of Jane Doe's Title IX investigation without deputizing anyone to continue the investigation during his apparently three-week absence. *See* DE 69 Ex. K, Email from Lake to Assailant (Oct. 16, 2013, 8:51 PM); *see also* DE 69 Ex. J.

The Title IX investigation continued until the end of the Fall 2013 semester—considerably longer than the approximate 60-day duration called for in the April 2011 Title IX "Dear Colleague Letter."  *See* **Exhibit B**. On November 26, 2013, while Jane Doe was home during the Thanksgiving recess, Dean Lake notified her by email that Assailant's disciplinary hearing would be held on December 10, 2013, the final day of classes for the Fall 2013 semester.  DE 69 Ex. N, Email thread between Lake and Jane Doe (dates ranging from Nov. 25, 2013 to Dec. 9, 2013); *see also* DE 69 Ex. A at 152:15–154:02; DE 69 Ex. O, Univ. of Miami Academic Calendar.  The University scheduling the disciplinary hearing at the beginning of finals period was in direct

contravention of University of Miami school policy, and further deprived Plaintiff of a fair opportunity to succeed academically by causing her to expend time, attention, and tremendous emotional energy on the disciplinary hearing instead of preparing for her final exams.

On December 4, 2013, Jane Doe sent an email to Abramson and Lake detailing Assailant's violation of the no-contact order in what was essentially him stalking her recently on campus. DE 69 Ex. P, Email from Jane Doe to Lake and Abramson (Dec. 4, 2013); DE 69 Ex. A at 142:06–143:24, 144:16–145:01; DE 69 Ex. B at 196:08–197:06, 199:05–22. She reiterated that she was concerned for her safety. DE 69 Ex. P; DE 69 Ex. B at 199:23–200:05. On December 8, 2013, Jane Doe sent an email to Abramson and Lake reporting that another student had informed her that Assailant had been inquiring about her whereabouts, including whether she would be attending an upcoming party, as well as asking several other students to take pictures of Jane Doe at the party and send them to him. DE 69 Ex. A at 143:12–144:06, 146:17–147:14; DE 69 Ex. B at 214:22–215:18.

On December 9, 2013, Lake replied to Jane Doe's email dated December 4, 2013, and notified her that Dean of Students Ricardo Hall had "look[ed] into the [alleged stalking] situation" by meeting with Assailant the week prior, and had determined not to charge Assailant with further violations (presumably for allegedly violating the No-Contact Order), but that he had reiterated the No-Contact Order to Assailant. DE 69 Ex. Q, Email from Lake to Jane Doe and Abramson (Dec. 9, 2013); DE 69 Ex. N; *see also* DE 69 Ex. A at 162:16–163:25. The University's refusal to enforce the No-Contact Order despite having been notified of violations contributed significantly to Jane Doe feeling unsafe on campus and exposed her to further harassment. *See*, *e.g.*, DE 69 Ex. A at 167:17–169:22.

The University never placed Assailant on interim or temporary suspension to protect Plaintiff's rights during the pendency of the investigation, during Dean Lake's leave, or at any point prior to the disciplinary hearing.  DE 69 Ex. B at 158:14-159:02; 160:25-162:14.  Instead, the University caused Plaintiff to live in fear on campus every single day. *Id.* at 204:20-206:15; DE 69 Ex. B at 58:15-24.  Even after finding Assailant "responsible" for all offenses, including the most serious sexual violence, at his major disciplinary hearing, the University did not immediately remove him from campus, but instead delayed nearly a week before expelling him, causing Jane Doe to experience tremendous anxiety and fear for her safety as she continued to see him around campus during final exams.  DE 69 Ex. A at 218:21–220:19.

On December 17, 2013,—while still on campus the day *after* his expulsion—the Assailant was arrested by local law enforcement on criminal charges stemming from the same underlying incidents as the Title IX investigation.  DE 69 Ex. A at 221:06–24.  He later pleaded guilty to associated criminal charges.  DE 69 Ex. Z, Case Information from Assailant's Criminal Case (closed Apr. 17, 2014).  Ultimately, Plaintiff returned to campus in January 2014 but continued to struggle and became increasingly depressed about the adverse implications for her academic record resulting from her rape and the University's handling of the rape during the prior semester. DE 69 Ex. A at 274:16–285:08, 329:04–332:09.  She became despondent and attempted suicide in January 2014, after which she was granted a retroactive withdrawal from the University for the Spring 2014 semester so she could attend an inpatient treatment program.   DE 69 Ex. A at 285:09–11, 288:10–289:07, 289:18–293:22.

## **LEGAL STANDARD**

In reviewing a Motion for Summary Judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  "The moving party may discharge this 'initial responsibility' by showing that there is an absence of evidence to support the nonmoving party's case or by showing that the nonmoving party will be unable to prove its case at trial." *Hickson Corp., v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004).  "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." *Kesinger ex rel. Estate of Kesinger v. Herrington*, 381 F.3d 1243 (11th Cir. 2004).  "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories and admission on file, designate specific facts showing that there is a genuine issue for trial." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590 (11th Cir. 1995).

If the evidence used to oppose a motion for summary judgment is "merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2513 (1986).  The Court may make a factual finding where the evidence is "so one-sided that one party must prevail as a matter of law."  *See id*. at 2512.  Stated plainly, a summary judgment should only be denied where there exist issues that may "reasonably be resolved in favor" of the non-movant.  *See id.* at 2513.  An issue of fact that presents a "he said, she said" scenario should only go to a jury for resolution "if the record has evidence genuinely supporting both sides."  *Schumann v. Collier Anesthesia, P.A.*, 2016 U.S. Dist. LEXIS 148932 (M.D. Fla. 2016).

## ARGUMENT

### I.       THE UNIVERSITY OF MIAMI DISCRIMINATED AGAINST PLAINTIFF IN VIOLATION OF TITLE IX.

The Supreme Court has recognized Title IX includes an implied right of action for individuals to enforce this requirement. *Cannon v. Univ.of Chicago*, 441 U.S. 677, 717 (1979).

> A plaintiff seeking recovery for a violation of Title IX based on student-on-student harassment must prove four elements. First, the [University] must be a Title IX funding recipient. *Floyd v. Waiters*, 133 F.3d 786, 789 (11th Cir. 1998) ["*Floyd I*"], *vacated on other grounds*, 525 U.S. 802 . . . (1998), *reinstated*, 171 F.3d 1264 (11th Cir. 1999) ["*Floyd II*"]. Second, an "appropriate person" must have actual knowledge of the discrimination or harassment the plaintiff alleges occurred. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). "[A]n 'appropriate person' . . . is, at a minimum, an official of [the University] with authority to take corrective action to tend the discrimination." *Id.* Third, [the University] is liable for student-on-student harassment only if "[the University] acts with deliberate indifference to known acts of harassment in its programs or activities." *Davis*, 526 U.S. at 633 . . . . In considering this element, we analyze the conduct of [the University], not the alleged harasser; we do this to ensure that we hold [the University] liable solely because a person affiliated with [the University] discriminated against or harassed the plaintiff. *Hawkins v. Sarasota County Sch. Bd.*, 322 F.3d 1279, 1284 (11th Cir. 2003). Fourth, the discrimination must be "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis*, 526 U.S. at 633 . . . .

*Williams*, 477 F.3d at 1293 (citing *Davis,* 526 U.S at 633).

### a. Defendant is a Title IX funding recipient.

The parties agree that the University is a Title IX funding recipient. Pl.'s Am. Compl., ¶ 74; Def.'s Answer to Pl.'s Am. Compl., ¶ 74.

### b. Multiple "appropriate persons" had actual knowledge of Plaintiff's allegations of harassment.

A Plaintiff seeking damages under Title IX must establish that an "appropriate person" had actual knowledge of the harassment the plaintiff alleges occurred. *Gebser*, 524 U.S. at 290.

### i. Dean Lake, case manager Abramson and Dean Hall were each "appropriate persons" for Title IX purposes.

For Title IX purposes, an "appropriate person" is "an official [of the University] who at a minimum has authority to address the alleged discrimination and to institute corrective measures." *Gebser*, 524 U.S. at 290; *see also Kinsman v. Fla. State Univ. Bd. of Trustees*, 4:15CV235-

MW/CAS, 2015 WL 11110848, at *5 (N.D. Fla. Aug. 12, 2015).  An "appropriate person" must be an official "high enough up the chain-of-command that his acts constitute an official decision by the [University] itself not to remedy the misconduct."  *Floyd II*, 171 F.3d at 1264 (citing *Floyd I*, 133 F.3d at 790–92, *vacated on other grounds by* 525 U.S. 802, 119 S.Ct 33, 142 L.Ed.2d 25 (1998), *reinstated in Floyd II*, 171 F. 3d 1264.

Here, the University's then-Deputy Title IX Coordinator for Student Affairs, Associate Dean William "Tony" Lake, was notified by emails from Residential Life staff on September 14, 2013, that Plaintiff had reported harassment calling for a Title IX investigation.  DE 69 Ex. B at 162:16–166:03; DE 69 Ex. F, Email thread between Ceballos, Vasquez, and Lake (Sept. 14, 2013).[1]  Dean Lake was the top official responsible for determining whether or not to initiate a Title IX investigation and for conducting any investigation initiated regarding student issues such as student-on-student sexual violence and stalking.  DE 69 Ex. B at 13:11–23.  Pursuant to this report, in a meeting on September 16, 2013, Plaintiff informed Dean Lake and case manager Nicole Abramson that she had been sexually assaulted on August 22.  DE 69 Ex. A at 125:16–126:02. The Dean of Students Office's official policy was to bifurcate its handling of Title IX investigations by having Dean Lake handle the investigation, while a case manager (in Plaintiff's case, Abramson) was responsible for looking after the trauma victim's wellbeing and served as a "quarterback" to coordinate resources to help with emotional and psychological trauma.  DE 69 Ex. B at 52:03–55:08.

---

[1] Plaintiff initially reported behavior by Assailant sufficient for a Title IX investigation to Oscar Vasquez, Assailant's Hall Supervisor in the Residential Life office, on September 11, 2013.  DE ___ Ex. A at 118:11–119:04, 119:25–120:07; DE ___ Ex. E, Email from Ceballos to Lake (Sept. 18, 2013, 11:57 AM) (with attached Notes by Vasquez and Ceballos); DE ___ Ex F.

In that capacity, Abramson made representations to Plaintiff regarding the official University policy and procedures for obtaining academic accommodations, including telling Plaintiff that she was ineligible for formal disability accommodations because she had no physical disability. *See* DE 69 Ex A. at 322:14–323:04. Dean Lake, Nicole Abramson, and all other University officials that Plaintiff engaged undeniably "appropriate persons" for Title IX purposes; based on her role in coordinating resources to meet Title IX trauma victims' emotional and psychological needs and her representation to Plaintiff that she did not qualify for disability accommodations, Abramson was also an "appropriate person" for Title IX purposes.

### ii. Dean Lake, case manager Abramson, Dean Hall, and Vice President Whitley each had actual knowledge of Plaintiff's alleged harassment.

For Title IX purposes, "actual knowledge" sufficient to support a damages remedy requires knowledge by "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [University]'s behalf [who] fails adequately to respond." *Gebser*, 524 U.S. at 290; *Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 700 (4th Cir. 2007) (finding that the plaintiff had given the official, and by extension UNC, actual notice of harassment).

Lake and Abramson were "appropriate persons" who gained actual knowledge of Plaintiff's specific allegation of sexual assault during their meeting with her on September 16, 2013, including details of the assault. DE 69 Ex. A at 125:16–126:02. Dean Lake subsequently imparted actual knowledge to two other "appropriate persons," Dean Hall and Vice President Whitley, by email dated September 17, 2013. DE 69 Ex. C. Accordingly, the University had actual knowledge that Plaintiff had suffered harassment from at least September 14, 2013. *Cf. Jennings*, 482 F.3d at 700–01.

  **c. Defendant University's actions and inactions pertaining to the handling of Plaintiff's Title IX case cumulatively constitute deliberate indifference to multiple known incidents of harassment suffered by Plaintiff, including rape, stalking, and physical assault.**

  A private right of action under Title IX exists when "an official of the [University] who at a minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the [harassment suffered by the victim]." *Gebser*, 524 U.S. at 285.  A Title IX funding recipient becomes liable for student-on-student harassment when the school's response (or lack thereof) to the sexual harassment is "clearly unreasonable in light of the circumstances." *Davis*, 526 U.S. at 648.

  "Deliberate indifference" requires, at a minimum, that the school "cause[s] [students] to undergo" harassment or "make them liable or vulnerable" to it, and that the harassment occur "under" "the operations of" a funding recipient, i.e., in circumstance in which the school "exercises substantial control over both the harasser and the context in which the known harassment occurs." *Id.* at 645 (citations to dictionary definitions omitted); *see also Williams*, 477 F.3d at 1295–96; *Gebser*, 524 U.S. at 291 (an "appropriate person's" refusal to take action to remedy a known Title IX violation constitutes "deliberate indifference").  A university that initiates an investigation upon being notified of a potential Title IX violation but that fails to provide adequate and timely corrective measures to protect the victim's rights under Title IX and to prevent further harassment falls short of Title IX's requirements.  *See Williams*, 477 F.3d at 1296; *see also Jennings*, 482 F.3d at 700–01 (university's failure to remedy hostile environment of sexual harassment after notice to appropriate person would allow rational jury to find deliberate indifference); *see also Spencer v. Univ. of N.M. Bd. of Regents*, 2016 WL 10592223, at *6 (D.N.M. Jan. 11, 2016).

  Courts determine deliberate indifference by evaluating the school's conduct, not that of the alleged harasser.  *Williams*, 477 F.3d at 1293.  Deliberate indifference is a fact-specific inquiry,

"for which bright lines are ill-suited." *Roe ex rel. Callahan v. Gustine Unified Sch. Dist.*, 679 F.Supp.2d 1008, 1035 (E.D. Cal. 2009) (quoting *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 457 n. 12 (5th Cir. 1994).  Multiple allegations, taken together, can support "a plausible claim that [a university]'s responses to [a plaintiff's] report of sexual harassment was deficient and not reasonably expected to remedy the violation. *Takla v. Regents of the Univ. of Cal.*, 2:15-CV-04418-CAS(SHx), 2015 WL 6755190, at *6 (C.D. Cal. Nov. 2, 2015).

In *Farmer v. Kan. State Univ.*, 918 F.3d 1094 (10th Cir. 2019), multiple plaintiffs alleged they had suffered student-on-student rapes. *Id.* at 1098.  The *Farmer* plaintiffs "base[d] their Title IX claims on [the university]'s deliberate indifference *after* [p]laintiffs reported to [the university] that other students had raped them, which they further alleged interfered with their ability to participate in education opportunities and use available resources offered by the university for fear of encountering their uncheck student-rapists. *Id.* The plaintiffs alleged that the university's response to their reports of rape to appropriate persons "was so deficient as to amount to deliberate indifference." *Id.* at 1099.  The Court concluded that the plaintiffs had sufficiently pleaded that the university's deliberate indifference caused them to be vulnerable to further harassment by alleging, among other things, that the university's deliberate indifference had caused them objectively to fear encountering their unchecked assailants on campus, which in turn interfered with plaintiffs' in participation the educational opportunities the university offered its students. *Id.* at 1109.

In *Williams*, 477 F.3d 1282, the plaintiff was a university student who was invited to the dorm room of a student athlete, where the two had consensual sex before the student athlete allowed and encouraged two other student athletes unknown to plaintiff to "run a train" on plaintiff, sexually assaulting and raping or attempting to rape her. *Id.* at 1288.  Within 48 hours of the

incident, the university's Chief of Police notified the university's Director of Judicial Programs of the incident. *Id.* at 1289. The disciplinary panel hearings were not conducted until several months after the incident and the investigation. *Id.* The Court held that the plaintiff had alleged sufficient facts in her complaint to demonstrate the defendants were deliberately indifferent to the alleged discrimination and that the district court erred in concluding that the response was "not 'clearly unreasonable' as a matter of law." *Id.* at 1295.

Here, as threshold matter, both Plaintiff and her Assailant were students at the University and therefore were bound to abide by its code of conduct, both on- and off-campus, including its prohibitions against sexual harassment. *See* DE 69 Ex. B at 147:20–160:24. Although Plaintiff was raped at her off-campus apartment, the University had authority over the Assailant because he was a University student. Similarly, because the rape was perpetrated against another student, the University had authority over the context in which the harassment occurred. Likewise, subsequent instances of Assailant's harassment of Plaintiff, including stalking and physical assault, were subject to the University's authority. Therefore, the University had authority over both the harasser and the context in which the harassment occurred—a fact highlighted by the University's ultimate, albeit belated, expulsion of Assailant in mid-December 2013 as punishment.

Despite having known since at least September 17, 2013, that Assailant raped, stalked, and physically assaulted Plaintiff in a short span, the University failed to protect Plaintiff. The University unreasonably failed to properly conduct a risk assessment of the threat of further violence Assailant's continued presence on campus posed to Plaintiff. *See* **Ex. A** at p. 24. The University unreasonably failed to place Assailant on an interim suspension to limit Plaintiff's exposure to risk of further harassment or violence. DE 69 Ex. B at 158:14–159:02; *see also id.* at 160:25–162:14; *cf.* DE 69 Ex. B at 158:14–162:14 (Dean Hall and Vice President Whitley had the

authority impose temporary suspensions, and had done so in other student conduct cases); *cf.* **Ex. A** at pp. 17–18 (expert report indicated interim suspension would have been appropriate).

Rather than issuing a formal No-Contact Order from the Dean of Students Office, the University unreasonably opted to issue an informal verbal instruction through Assailant's Hall Supervisor, Vasquez, which Vasquez confirmed a day later via email. *See* DE 69 Ex. B at 07:03–08:11, 12:08–14, 98:25–100:03, 168:16–20; *see also* DE 69 Ex. F.[2] The University unreasonably refused to enforce even this informal No-Contact Order, despite reports by Plaintiff of stalking behavior by Assailant while the investigation was ongoing. *See*, *e.g.*, DE 69 Ex. A at 162:16–169:22 (Lake and Abramson "brush[ed] off Plaintiff's reports of Assailant's stalking behavior during the semester, and Dean Hall chose not to charge Assailant for violating the No-Contact Order after Plaintiff reported he had been stalking her upon her return from Thanksgiving Break).

The University unreasonably failed to provide an effective remedy to the academic challenges Plaintiff reported. DE 69 Ex. B at 180:02–184:23, 219:20–221:15. In at least one instance, Abramson, in her role as Plaintiff's case manager in the Dean of Students Office, actively discouraged Plaintiff from pursuing formal disability accommodations through the University's Center for Students with Disabilities, informing Plaintiff that such accommodations were reserved for students with physical disabilities such as being in a wheelchair. DE 69 Ex. A at 322:14–323:04.

Dean Lake unreasonably delayed the investigation when he took leave and left the country for several weeks in October 2013 without notifying Plaintiff or deputizing another investigator during his absence. *See* DE 69 Ex. K; *see also* DE 69 Ex. J; *cf.* DE 69 Ex. B at 59:04–60:14 As a

---

[2] This informal No-Contact Order deviated from industry standards and practices and materially deviated from the University's own standards and practices for issuing No-Contact Orders. *See* **Ex. A** at pp. 15–16, 24.

16

result, the investigation unreasonably dragged on for nearly three months until final exams period at the end of the semester.  DE 69 Ex. A at 204:03–05.  As a result of the investigation not having been promptly conducted, the University unreasonably scheduled Assailant's disciplinary hearing on December 10, 2013, the day before the final exams period began, in contravention of University policy.  DE 69 Ex. N; *see also* DE 69 Ex. O.

To make matters worse, despite the finding at the hearing that Assailant was responsible on all charges, the University unreasonably failed to issue immediate sanctions to remove him from campus, instead exposing Plaintiff to further risk and fear as Assailant remained on campus for a week after the hearing.  DE 69 Ex. A at 218:21–220:19. In fact, even after the University notified Assailant of his expulsion on December 16, 2013, it unreasonably failed to ensure Assailant had left campus, as evidenced by his arrest by local law enforcement on related criminal charges while still on campus the following day.  *See* DE 69 Ex. A at 221:06–24.  In doing so, the University deprived Plaintiff of a fair opportunity to succeed academically by causing her to expend time, attention, and tremendous emotional energy on the disciplinary hearing at a time when practically all other students were preparing for final exams, with the predictable result that Plaintiff's end-of-semester academic performance was significantly negatively impacted.  *See* **Ex. A** at pp. 18 –21, 25.  The University's actions and inactions cumulatively constitute a pattern of deliberate indifference on the part of the University toward the harassment to which Assailant subjected Plaintiff and to the fact the University's actions and inactions exposed Plaintiff to further harassment. *See Davis*, 526 U.S. at 645; *see also Williams*, 477 F.3d at 1295–96; *see also Gebser*, 524 U.S. at 291.

> **d. Plaintiff suffered harassment so severe, pervasive, and objectively offensive that it effectively barred her access to the educational opportunity to perform academically up to her normal ability and the benefit of an educational environment free from harassment.**

17

For a plaintiff to have a viable Title IX claim for harassment, she must establish that a hostile educational environment existed by showing that she suffered discrimination or harassment "so severe, pervasive, and objectively offensive that it effectively bar[red] [her] access to an educational opportunity or benefit." *Davis*, 526 U.S. at 633. "A Title IX plaintiff completes her hostile environment showing at the summary judgment stage if, based on her proffered evidence, the sexual harassment '*can be said* to deprive [her] of access to . . . educational opportunities or benefits." *Jennings*, 482 F.3d at 699 (quoting *Davis*, 526 U.S. at 650) (emphasis in *Jennings*). The *Davis* decision offered several examples of what harassment constitutes deprivation of access to educational opportunities, including when the harassment: (1) results in the physical exclusion of the victim from an educational program or activity; (2) "so undermines and detracts from the victim['s] educational experience" as to "effectively den[y her] equal access to an institution's resources and opportunities"; or (3) has a 'concrete, negative effect on [the victim's] ability' to participate in an educational program or activity. *See Jennings*, 482 F.3d at 699 (citing *Davis*, 526 U.S. at 650–51, 654). "When it comes to Title IX sexual harassment, such as rape, it is said that '[t]he effect of such abusive conduct on a victim does not necessarily end with a cessation of the abusive conduct, particularly if the victim and abuser retain the same or similar roles in an educational institution.'" *Kinsman*, 2015 WL 11110848, at *4 (quoting *Wills v. Brown Univ.*, 184 F.3d 20, 36-37 (1st Cir. 1999)). The United States District Court for the Northern District of Florida has held the possibility of future encounters between a victim and her attacker can effectively deprive the victim of access to educational opportunities. *See Kinsman*, 2015 WL 11110848, at *4; *Doe v. Howard Univ.*, 396 F.Supp.3d 126, 141 (D.D.C. July 11, 2019).

Here, as a threshold matter, by the time the University obtained actual knowledge of Plaintiff's harassment by Assailant, she had already suffered multiple incidents of peer harassment,

including the initial rape, a subsequent stalking event when he showed up drunk at her apartment at 2:00 AM and made threatening gestures at her, and an incident at a frat party where he physically assaulted Plaintiff and then repeatedly called and texted her. *Cf. Hawkins*, 322 F.3d at 1289. Like the plaintiffs in *Farmer* and *Howard* above, Plaintiff reported to the "appropriate persons" at the University that she feared running into her Assailant on campus or that he would appear again uninvited at her apartment. DE 69 Ex. B at 173:20–174:22. Like several of these plaintiffs, this fear caused Plaintiff to miss classes and to struggle academically. DE 69 Ex. I at 83:11–85:08; DE 69 Ex. B at 178:08–21; DE 69 Ex. J. After being raped Plaintiff was diagnosed with anxiety, depression and PTSD. DE 69 Ex. A at 337:08–11, 348:08–21. These mental health issues and feelings of unsafety and panic attacks negatively affected Plaintiff's ability to perform on every exam and class activity in the Fall 2013 Semester. *Id.* at 322:03–08.

Furthermore, similar to *Howard*, the Assailant violated the No-Contact Order issued by the University. *See*, *e.g.*, DE 69 Ex. P; DE 69 Ex. A at 142:06–143:24, 144:16–145:01; DE 69 Ex. B at 196:08–197:06, 199:05–200:05. The University's failure to enforce the No-Contact Order contributed significantly to Jane Doe feeling unsafe on campus and exposed her to further harassment. *See*, *e.g.*, DE 69 Ex. A at 167:17–169:22 (Dean Lake told Plaintiff she should try to avoid being on campus or going to the library or other places where she might encounter Assailant); *see also id.* at 162:21–167:16.

The University's months-long delay in concluding its investigation and imposing sanctions against Assailant, compounded by the University's failure to place Assailant on interim suspension during the investigation to limit Plaintiff's exposure to risk of further harassment, "so undermine[d] and detract[ed] from [Plaintiff's] educational experience" as to "effectively den[y] her] equal access to [the University]'s [educational] resources and opportunities" and had a

"concrete, negative effect on [the victim's] ability" to participate in an educational program or activity. *See Jennings*, 482 F.3d at 699 (citing *Davis*, 526 U.S. at 651, 654).  Based on Plaintiff's proffered evidence, the sexual harassment she suffered can be said to have deprived her of access to educational opportunities and benefits.  *See Jennings*, 482 F.3d at 699; *see also Davis*, 526 U.S. at 650).  As in *Farmer* and *Howard*, the harassment allegedly suffered by Plaintiff, and the further harassment to which she was exposed, was "so severe, pervasive, and objectively offensive that it effectively bar[red] [her] access to an educational opportunity or benefit."  *See Davis*, 526 U.S. at 633.

## Conclusion

In light of the circumstances of this case, it was clearly unreasonable for the University to: fail to properly conduct a risk assessment; fail to place Assailant on interim or temporary suspension to limit Plaintiff's risk of exposure to further harassment during the investigation; fail to issue a formal No-Contact Order in compliance with University procedures and industry standards; fail or refuse to enforce even the informal No-Contact Order; fail to refer Plaintiff to and instead actively discourage Plaintiff from, contacting the University's Center for Students with Disabilities to pursue formal disability accommodations; failing to promptly initiate and prosecute the investigation; schedule the disciplinary hearing the day before final exams began; fail to immediately remove Assailant from campus upon finding him responsible on all charges at the hearing and instead delay sanctions until almost a week after the hearing; and fail to communicate with Plaintiff's teachers to obtain necessary accommodations for her to ensure that she had equal opportunity for education at the University of Miami.  *See Davis*, 526 U.S. at 648.

Based on the foregoing, Plaintiff has established a viable claim for sexual harassment under Title IX.  As such, Plaintiff's Motion for Summary Judgment should be granted.

Dated:  November 21, 2019                Respectfully Submitted,

                                         /s/ Bradley J. Edwards
                                         **BRADLEY J. EDWARDS**
                                         FLORIDA BAR NO.: 542075
                                         **BRITTANY N. HENDERSON**
                                         FLORIDA BAR NO.: 118247
                                         EDWARDS POTTINGER LLC
                                         425 North Andrews Avenue, Suite 2
                                         FORT LAUDERDALE, FL  33301
                                         (954)524-2820 TELEPHONE
                                         E-mail: staff.efile@epllc.com, Brad@epllc.com

                                         *Attorneys for Plaintiff*


### CERTIFICATE OF SERVICE

I certify that on November 21, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. I also certify that the foregoing document is also being served on this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

                                         /s/ Bradley J. Edwards
                                         Bradley J. Edwards


### SERVICE LIST

*Attorneys for Defendant*

Eric D. Isicoff
Teresa Ragatz
Christopher M. Yannuzzi
ISICOFF, RAGATZ & KOENIGSBERG
601 Brickell Key Drive, Suite 750
Miami, Florida 33131
Isicoff@irlaw.com
Ragatz@irlaw.com
Yannuzii@irlaw.com