UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 17-23408-CIV-GAYLES/LOUIS

**JANE DOE,**

          Plaintiff,

v.

**UNIVERSITY OF MIAMI,**

          Defendant.

_____/

## ORDER

**THIS CAUSE** comes before the Court on Plaintiff Jane Doe's Motion for Partial Summary Judgment [ECF No. 71] and Defendant's Motion for Final Summary Judgment [ECF No. 75] (the "Motions"). The Court has reviewed the Motions and the record and is otherwise fully advised. For the reasons that follow, Doe's Motion is denied and Defendant's Motion is granted.

### I.     BACKGROUND[1]

#### A.     Events Giving Rise to the Action

Plaintiff Jane Doe and R.K.[2] met as undergraduate students at the University of Miami ("Defendant" or "University") during the fall of 2012, and began dating the following spring. [Def.'s SUMF, ¶ 3]. On August 21, 2013, Doe invited R.K. and some of her friends to her

---

[1] The facts relevant to the Motions are undisputed unless otherwise indicated and are taken from the following statements of facts along with their accompanying exhibits: (1) Defendant's Statement of Undisputed Material Facts [ECF No. 76 ("Def.'s SUMF")]; (2) Plaintiff's Counter Statement of Facts in Support of Plaintiff's Memorandum in Opposition to Defendant's Statement of Undisputed Material Facts in Support of its Motion for Final Summary Judgment [ECF No. 80 ("Pl.'s CSMF")]; and (3) Defendant's Reply in Support of Motion for Final Summary Judgment [ECF No. 88 ("Def.'s RSMF")].

[2] The Court refers to Doe's assailant as "R.K."

1

off-campus apartment for a small party. [*Id.*, ¶ 9]. During the party, while Doe and R.K. were alone in Doe's bedroom, R.K. sexually assaulted Doe. [*Id.*, ¶ 11]. Doe left the bedroom, told her friends what happened, and later fell asleep in the living room. [*Id.*]. After everyone left Doe's apartment the next morning, Doe went to R.K.'s on-campus dorm room and broke up with him. [*Id.*, ¶ 12]. On September 1, 2013, R.K. went to Doe's apartment uninvited, acting "obnoxious" and "aggressive" and "banging on walls" ("September 1 incident"). [*Id.*, ¶ 15]. On September 11, 2013, Doe met with Oscar M. Vazquez, Jr. ("Mr. Vazquez") (R.K.'s resident hall supervisor) and reported the September 1 incident and her concerns that R.K. may harm himself. [*Id.*, ¶ 17].

Doe again encountered R.K. at a fraternity party on September 13, 2013 ("Fraternity Party"). [*Id.*, ¶ 19]. At the party, R.K. pushed Doe, causing her to stumble and to brace herself against the DJ table. [*Id.*]. Fraternity brothers had to physically subdue R.K. to remove him from the party. [Pl.'s CSMF, ¶ 19]. The next day, Doe told Mr. Vazquez about R.K.'s behavior at the Fraternity Party. [Def.'s SUMF, ¶ 20]. Mr. Vazquez immediately relayed the information to his supervisor, Ivan Ceballos, who then shared Doe's concerns with Associate Dean of Students, William Anthony Lake ("Dean Lake"). [*Id.*]. That same day, Mr. Vazquez told R.K. over the phone and over email that R.K. was prohibited from having any contact with Doe "under any circumstances" ("No Contact Order" or "NCO"[3]). [*Id.*].

    B.    **Defendant's Response**

        1.    <u>Title IX Investigation</u>

On September 16, 2013, Doe met with Dean Lake and Assistant Dean of Students Nicole Abramson ("Dean Abramson") to report R.K.'s assault, the September 1 incident, and the

---

[3] Though Plaintiff characterizes Mr. Vazquez's direction to R.K. as an "informal verbal instruction" [ECF No. 71 at 9] and as an "informal No-Contact Order" [*Id.* at 16], the Court refers to the directive as a "No Contact Order" based on Doe's assertion in her deposition that she was aware Defendant had issued an NCO to R.K. to stay away from her. *See* [ECF No. 76-1 at 148].

2

Fraternity Party. [*Id.*, ¶ 21 & Pl.'s CSMF, ¶ 21]. Dean Lake told Doe that he would begin an investigation into her claims and that an NCO had been issued to R.K, which instructed him not to contact her. [Def.'s SUMF, ¶ 21]. That same day, Dean Lake opened a Title IX investigation and emailed the following officials to inform them of the new case and of Doe's allegations: (1) Dean of Students, Ricardo Hall, Defendant's official responsible for mitigation and sanctioning ("Dean Hall"), and (2) Vice President of Student Affairs, Patricia Whitley, Defendant's designated Title IX appellate officer ("Dr. Whitley"). [Pl.'s CSMF, ¶ 21].

Three days later, Dean Hall met with R.K. to discuss Doe's allegations. [Def.'s SUMF, ¶ 25]. Dean Hall found that suspending R.K. was not appropriate at that time and reiterated to R.K. that he was prohibited from having any contact with Doe. [*Id.*]. Dean Lake conducted his investigation over the next couple of months; he interviewed Doe several times, as well as R.K., and Doe's two friends who were present the night of the assault, and he collected witness testimonies and evidence of communication between Doe and R.K. [*Id.*, ¶¶ 26, 28]. Doe and R.K. sometimes failed to promptly respond to Dean Lake's requests for documents, and Dean Lake was still receiving documents as late as early December. [*Id.*, ¶¶ 28, 36].

On December 4, 2013, Doe told Deans Lake and Abramson that although she and R.K. had "very rarely crossed paths" over the semester, she had started to see him more often after Thanksgiving break. [*Id.*, ¶ 31]. Four days later, Doe again emailed the Deans to tell them that R.K. had been asking their mutual friends about whether Doe was attending an upcoming party. [*Id.*, ¶ 32]. Dean Hall immediately met with R.K. to investigate Doe's concerns and again restated to R.K. that he was prohibited from having any contact with Doe. [*Id.*, ¶ 33]. Soon after Dean Hall's meeting with R.K., Dean Lake also met with R.K., determined that he had not been following Doe, and emailed those findings to Doe. [*Id.*].

### 2. R.K.'s Disciplinary Hearing and Sanctions

On November 26, 2013, the University advised Doe that R.K.s Major Disciplinary Hearing (the "Hearing") would be held on December 10, 2013. [*Id.*, ¶ 30]. Defendant charged R.K. with five violations of the University's Student Code of Conduct based on his sexual assault of Doe, the September 1 incident, and the Fraternity Party. [*Id.*, ¶ 34]. R.K. pled "Not Responsible" to two charges: (1) Relationship and/or Intimate Partner Violence and (2) Sexual Assault and/or Battery. [*Id.*]. In the days leading up the Hearing, Doe and Dean Lake exchanged several emails about the Hearing procedure and about documents for the Hearing. [*Id.*, ¶ 35]. The day before the Hearing, Doe sent Dean Lake, for the first time, screenshots of some Facebook messages between her and R.K. [*Id.*]. At the Hearing, Doe, R.K., and Doe's two friends testified, and Dean Lake presented his findings. [*Id.*, ¶ 37]. The University panel found R.K. "Responsible" for both charges. [*Id.*, ¶ 37]. On December 12, 2013, Dean Lake advised Doe that if she started seeing R.K. more frequently, she should let him know and he would address it immediately. [*Id.*, ¶ 38].

On December 13, 2013, Dean Hall met with Doe about R.K.'s potential sanctions, and Doe requested that R.K. be expelled from the University. [*Id.*, ¶ 39]. Three days later, Dean Hall informed Doe that the University had expelled R.K. with no right to future readmission. [*Id.*, ¶ 40]. The next day, local law enforcement arrested R.K. on campus. [Pl.'s CSMF, ¶ 41]. The day after R.K.'s arrest, Defendant issued a trespass warning against R.K. [Def.'s SUMF, ¶ 41]. In April 2014, Dr. Whitley denied R.K.'s sanctions appeal, upheld his expulsion, and informed Doe of the same. [*Id.*, ¶ 51].

### 3. Doe's Accommodations

After Doe reported R.K.'s behavior on September 16, 2013, Doe separately met with Dean Abramson and told her that she was feeling overwhelmed with classes and was concerned about

her grades. [*Id.*, ¶ 22.]. Two days later, Dean Abramson emailed Doe's professors to advise that Doe was "managing a very difficult personal/legal matter which [wa]s impacting her ability to focus and ha[d] also impacted her attendance" and that Doe would be "following up with each of [them] directly" to discuss potential make-up work. [*Id.*]. Throughout the fall of 2013, Dean Abramson spoke with Doe multiple times about her options related to coursework and grades and recommended that Doe seek counseling. [*Id.*, ¶¶ 23, 24]. When Doe asked Dean Abramson about the process for taking "Incompletes," Dean Abramsom explained the process, encouraged Doe to speak directly to her professors, and immediately emailed Doe's professors to tell them that Doe "continued to struggle" and that she may be in contact about taking "Incompletes." [*Id.*, ¶¶ 45, 46].

When Doe returned to the University during the fall of 2014 after a medical leave of absence, she emailed her Fall 2013 professors to make up coursework and exams. [*Id.*, ¶ 56]. Doe was permitted to complete her Fall 2013 coursework until as late as May 2017, two years after she graduated on time in May 2015. [*Id.*, ¶ 57]. Upon completion of her coursework, Doe's "Incompletes" were changed to letter grades. [*Id.*, ¶ 56]. Doe never requested disability accommodations through the University's Office of Disability Services ("ODS"), notwithstanding knowing that Defendant's published procedures required anyone seeking disability accommodations to do so. [*Id.*, ¶ 58]. Defendant disputes Doe's claims that Dean Abramson told Doe that she was unable to get disability accommodations because "being raped did not entitle her to any kind of special accommodation." [Pl.'s CSMF ¶ 23 & Def.'s RSMF ¶ 23].

### C. Procedural History

On September 15, 2017, Plaintiff brought this Title IX action, alleging three counts against Defendant: (1) discrimination in violation of Title IX, 20 U.S.C. § 1681(a) ("Title IX"); (2) retaliation in violation of Title IX; and (3) violation of § 504 of the Rehabilitation Act,

29 U.S.C. § 701 (the "Rehabilitation Act"). [ECF No. 1]. Specifically, Plaintiff alleges that the University was deliberately indifferent to her reports of sexual assault and harassment, retaliated against her for such reports, and failed to provide her reasonable disability accommodations.

On March 12, 2018, the Court granted Defendant's First Motion to Dismiss [ECF No. 9], and Doe filed an Amended Complaint on March 20, 2018 [ECF No. 30]. On April 3, 2018, Defendant filed its Second Motion to Dismiss, which the Court denied on December 4, 2018 [ECF No. 46]. On November 21, 2019, Doe filed her Motion for Partial Summary Judgment, seeking summary judgment on Count 1 based on Defendant's alleged discrimination in violation of Title IX. [ECF No. 71]. On December 2, 2019, Defendant filed its Motion for Final Summary Judgment, seeking summary judgment as to all counts. [ECF No. 75]. The Motions are ripe for review.

## II.     LEGAL STANDARD

Summary judgment, pursuant to Federal Rule of Civil Procedure 56(a), "is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam) (quoting Fed. R. Civ. P. 56(a)) (internal quotation marks omitted). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no ***genuine*** issue of ***material*** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). An issue is "genuine" when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the nonmoving party in light of his burden of proof. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (citation omitted). A fact is "material" if, "under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004) (citation omitted).

"Where the material facts are undisputed and all that remains are questions of law, summary judgment may be granted." *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 818 F.3d 1122, 1138 (11th Cir. 2016), *vacated on other grounds*, *Eternal Word Television Network, Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 2016 WL 11503064, at *1 (11th Cir. May 31, 2016).

The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *SEC v. Monterosso*, 756 F.3d 1326, 1333 (11th Cir. 2014). However, to prevail on a motion for summary judgment, "the nonmoving party must offer more than a mere scintilla of evidence for its position; indeed, the nonmoving party must make a showing sufficient to permit the jury to reasonably find on its behalf." *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1050 (11th Cir. 2015). Furthermore, conclusory allegations will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion. *Earley v. Champion Intern. Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990) (citation omitted).

### III.   DISCUSSION

#### A.   Doe's Title IX Claims

Title IX provides, with certain exceptions not at issue here, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a). The statute allows federal agencies to enforce their requirements through "any . . . means authorized by law," including through the termination of federal funding. *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 280–81 (1998) (citing § 1682). "Title IX is also enforceable through an implied private right of action" where plaintiffs may obtain monetary damages. *Gebser*, 524 U.S. at 281 (citation omitted).

1.      Title IX Discrimination Claim

Sexual harassment constitutes discrimination under Title IX, and, "in certain narrow circumstances, a plaintiff may be able to recover for student-on-student harassment." *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1293 (11th Cir. 2007) (citation omitted). Plaintiffs seeking recovery for such violations must prove four elements: "(1) the defendant is a Title IX funding recipient; (2) an appropriate person had actual knowledge of the discrimination or harassment the plaintiff alleges occurred; (3) the funding recipient acted with deliberate indifference to known acts of harassment in its programs or activities; and (4) the discrimination is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Doe v. Bibb Cty. Sch. Dist.*, 688 F. App'x 791, 795 (11th Cir. 2017) (citation and internal quotations omitted).

Here, Defendant argues that Doe's Title IX discrimination claim fails as a matter of law because Doe cannot establish the third and fourth elements of her claim. As the Court finds that a reasonable jury could not find that Defendant acted with deliberate indifference to known acts of harassment, it does not address the fourth element.

To survive Defendant's summary judgment motion, Doe must present evidence from which a reasonable jury could conclude that Defendant was deliberately indifferent to known acts of harassment. *Id*. A funding recipient is deliberately indifferent only when its "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Kocsis v. Fla. State Univ. Bd. of Trustees*, 788 F. App'x 680, 684 (11th Cir. 2019) (citing *Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999)). Courts may determine on summary judgment that a response was not "clearly unreasonable" as a matter of law. *Davis*, 526 U.S. at 649. Officials will only be deemed deliberately indifferent if their response amounted to

an "official decision by the [funding] recipient not to remedy the violation." *Doe v. Sch. Bd. of Broward Cty., Fla.*, 604 F.3d 1248, 1259 (11th Cir. 2010) (citing *Gebser*, 524 U.S. at 290). Furthermore, the Title IX recipient's deliberate indifference must have "subject[ed] its students to harassment. That is, the deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." *Williams*, 477 F.3d at 1295–96 (citing *Davis*, 526 U.S. at 644–45) (internal quotations omitted).

"The deliberate indifference standard is rigorous and hard to meet." *Hill v. Cundiff*, 797 F.3d 948, 973 (11th Cir. 2015). The Supreme Court has made clear that "courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Davis*, 526 U.S. at 648 (citation omitted). Officials need not adopt a victim's "particular remedial demands" to avoid liability. *Id*. And the mere "failure to comply with [federal] regulations . . . does not establish the requisite actual notice and deliberate indifference." *Gebser*, 524 U.S. at 291–92; *see e.g.*, *Stinson as next friend of K.R. v. Montgomery Cty. Bd. of Educ.*, 365 F. Supp. 3d 1233, 1241 (M.D. Ala. 2019) (school board's lack of Title IX policy and violations of its own harassment policy was not deliberately indifferent); *Karasek v. Regents of Univ. of California*, No. 3:15-CV-03717-WHO, 2018 WL 1763289, at *11 (N.D. Cal. Apr. 12, 2018), *aff'd sub nom. Karasek v. Regents of the Univ. of California*, No. 18-15841, 2020 WL 486786 (9th Cir. Jan. 30, 2020) ("[Department of Education] guidance documents expressly state that they do not address the standard for a private right of action under Title IX."). "[T]he relevant inquiry is not whether the measures taken were effective in stopping discrimination, but whether the [school's] actions amounted to deliberate indifference." *Sauls v. Pierce Cty. Sch. Dist.*, 399 F.3d 1279, 1285 (11th Cir. 2005) (citation omitted). Courts must consider all relevant events and circumstances when determining whether a funding recipient acted with deliberate indifference. *See Hill*, 797 F.3d at 975.

9

Though Defendant's responses to Doe's reports of sexual assault and harassment may have been imperfect, the Court finds that they did not amount to deliberate indifference. In *Saphir by & through Saphir v. Broward Cty. Pub. Sch.*, the Eleventh Circuit held that corrective measures, like those taken by Defendant here, were not deliberately indifferent. 744 F. App'x 634, 638–39 (11th Cir. 2018). There, the school principal began an informal investigation within two days of actual notice of the alleged teacher-on-student harassment. *Id.* at 639. As part of his investigation, the principal (1) discussed the matter with the student's legal guardian, (2) interviewed and took statements from witnesses and the accused teacher, and (3) discussed the allegations and the appropriate response with three other administrators. *Id*. The principal also directed the accused teacher to stay away from the student, and the teacher complied. *Id.* When the student's parents later informed the school that the student had started missing classes because of the incident, the school "immediately took reasonable action." *Id.*

So too here. The parties agree that Defendant's Title IX duties were triggered on September 14, 2013, when Dean Lake was informed that Doe had reported R.K.'s physical aggression towards her at the Fraternity Party. That same day, Defendant took corrective action by issuing R.K. the NCO over the phone and in a follow-up email, which clearly prohibited R.K. from having any contact with Doe under any circumstances. When Doe later met with Deans Lake and Abramson to report R.K.'s assault and harassment, Dean Lake immediately opened a Title IX case and emailed Dean Hall and Dr. Whitley that same day to notify them of the new case and Doe's allegations. Dean Lake then conducted a three-months long formal investigation, which included interviewing R.K. and Doe's two friends who attended the party where the assault occurred, meeting with Doe several times, and reviewing evidence including witness testimonies and messages between R.K. and Doe. Dean Lake presented his findings at the Hearing where R.K. was

found "Responsible" on all charges. Six days after the Hearing, Dean Hall expelled R.K. from the University with no right to future readmission. Still, Doe argues that Defendant's actions and inactions cumulatively constitute a pattern of deliberate indifference. The Court disagrees and addresses Doe's specific arguments in turn.

First, Doe claims that Dean Lake's investigation was unjustifiably delayed, taking longer than the 60 days recommended by the Department of Education ("DOE"). Defendant counters that the investigation took as long as was necessary and that any delay was caused by Doe and R.K.'s failure to promptly provide Dean Lake documents. A reasonable jury could not find Dean Lake's investigation "clearly unreasonable in light of the known circumstances." *Kocsis*, 788 F. App'x at 684 (citation omitted) (finding "months-long investigation, which involved interviewing student and faculty, reviewing audio recordings from [the accused harrasser's] classes, and reviewing email evidence" not clearly unreasonable). Furthermore, that Dean Lake's investigation lasted longer than the DOE's suggested 60 days does not alone constitute deliberate indifference. *See Gebser*, 524 U.S. at 291–92 (finding that school's failure to comply with DOE regulations requiring funding recipients to "adopt and publish grievance procedures" did not establish the requisite deliberate indifference).

Doe further contends that Defendant's failure to institute particular measures—such as failing to (1) immediately suspend R.K., (2) issue a more "formal" NCO between Doe and R.K., or (3) immediately issue sanctions against R.K. after finding him "Responsible"—amounts to deliberate indifference. But the Supreme Court has rejected the idea that schools must immediately suspend or expel students accused of sexual harassment and has made clear that victims of peer harassment do not have a Title IX right to make "particular remedial demands." *Davis*, 526 U.S. at 648. Furthermore, Defendant's written and in-person instructions to R.K. to stay away from Doe

11

were not clearly unreasonable merely because Doe preferred Defendant to take more "formal" measures, especially where Doe fails to explain how these measures lacked formality.[4] *See e.g.*, *Saphir*, 744 F. App'x at 639 (considering defendant's direction to assailant to stay away from victim in finding no deliberate indifference). To Doe's third point, Dean Hall expelled R.K. just six days after the Hearing and just three days after meeting with Doe to discuss R.K.'s potential sanctions. The Court heeds the Supreme Court's mandate to "refrain from second-guessing" school's disciplinary decisions. *Davis*, 526 U.S. at 648 (citation omitted).

Doe next argues that Defendant was deliberately indifferent because University officials disregarded Doe's reports of R.K. stalking her over some indeterminate amount of time after Thanksgiving 2013. But the NCO was in place at that time, and "the relevant inquiry is not whether the measures taken were effective in stopping discrimination, but whether the [school's] actions amounted to deliberate indifference." *Sauls*, 399 F.3d at 1285 (citation omitted). After Doe told Deans Lake and Abramson that she had been seeing R.K. more often after Thanksgiving, Dean Lake took immediate remedial measures by meeting with R.K., determining that R.K. had not violated the NCO, reiterating to R.K. the terms of the NCO, and relaying the meeting details to Doe. Such a response cannot be deemed deliberately indifferent under Title IX's "rigorous and hard to meet" standard. *Hill*, 797 F.3d at 973.

Finally, Doe claims that Dean Abramson's actively discouraging her from pursuing formal disability accommodations through Defendant's ODS was clearly unreasonable. Taking this

---

[4] In her Response to Defendant's Motion, Doe claims that Defendant's "informal" NCO demonstrated Defendant's deliberate indifference because such action deviated from industry and Defendant's own standards, but Doe fails to cite any record evidence in support. [ECF No. 81 at 9, n.4]. Doe does, however, cite such record evidence in her Motion. [ECF No. 71 at 1]. But the exhibit on which Doe relies does not help her; it merely states that schools "may prohibit the alleged perpetrator from having any contact with the complainant pending the results of the school's investigation." *Id.* at 16. Defendant did just that.

disputed fact as true, a reasonable jury still could not find that it alone amounts to an "official decision by [Defendant] not to remedy the violation[,]" *Doe*, 604 F.3d at 1259 (citation omitted), in light of Defendant's remedial actions discussed *supra*.

### 2. Title IX Retaliation Claim

To establish a *prima facie* case of retaliation under Title IX, Doe must prove that "(1) she engaged in statutorily protected expression; (2) that she suffered an adverse action; and (3) that there is some causal relation between the two events." *Kocsis*, 788 F. App'x at 686 (citation omitted). "The retaliatory action must be materially adverse, meaning that it would have dissuaded a reasonable individual from making or supporting a charge of discrimination." *Id.* (citation and internal quotations omitted). The causal link element requires Doe to prove that Defendant "was aware of the protected expression and took materially adverse action as a result." *Id.* (citation omitted). This means that Defendant's "desire to retaliate was the but-for cause" of the alleged adverse action that it took against Doe. *Id.* (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013)).

Pulling from her discrimination claim, Doe contends that Defendant violated Title IX by retaliating against her sexual assault and harassment reporting through (1) failing to enforce its NCO against R.K., (2) informing Doe that she was ineligible for disability accommodations, (3) inadequately facilitating Doe's requests for academic accommodations with her professors, and (4) delaying its Title IX investigation into Doe's claims. Because Doe cannot establish that she suffered any materially adverse action, her retaliation claim fails as a matter of law.

Notably absent from Doe's Motion is any argument for how the following actions are "materially adverse[.]" *Kocsis*, 788 F. App'x at 686 (citation omitted). A reasonable jury could not find that Defendant failed to enforce its NCO against R.K. when the record is clear that Defendant

investigated Doe's claims and found that R.K. never violated the NCO. And even taking as true Doe's disputed claim that Dean Abramson told Doe that she was ineligible for disability accommodations, Doe cannot defeat summary judgment by relying on the conclusory allegation that this was done *because of* Doe's reporting. *See e.g.*, *id.* at 688 (affirming district court's grant of summary judgment in favor of defendant on plaintiff's retaliation claim where plaintiff "offered no evidence that she was denied an appeal *based on* her protected expression") (emphasis added). Furthermore, there is no evidence that Defendant inadequately facilitated Doe's academic accommodations. To the contrary, the record is replete with evidence that Dean Abramson spoke with Doe several times about her academic options and contacted Doe's professors on multiple occasions.[5] Finally, under these circumstances, Defendant's three-months-long investigation does not constitute an actionable delay. Accordingly, summary judgment shall be granted in favor of Defendant as to Doe's Title IX retaliation claim.

**B.     Doe's Rehabilitation Act Claim[6]**

Under the Rehabilitation Act, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." *J.A.M. v. Nova Se. Univ., Inc.*, 646 F. App'x 921, 926 (11th Cir. 2016) (citing 29 U.S.C. § 794(a)) (emphasis omitted). Discrimination under the

---

[5] Though Doe claims that she "expressed reservations about the difficulty of having to speak directly with each of her professors," [ECF No. 80, ¶ 22], the deposition testimony to which she cites does not demonstrate that she ever relayed those concerns to Dean Abramson. Doe followed-up with her professors directly to discuss opportunities to make up missed work. [Doe Dep., 244:22–245:4].

[6] As Rehabilitation Act discrimination claims are governed by the same standards used in Americans with Disabilities Act actions, the Court discusses cases related to both Acts. *See Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000).

Rehabilitation Act requires that a plaintiff prove that she "(1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of h[er] disability." *J.A.M.*, 646 F. App'x at 926. When a plaintiff alleges that a defendant violated the Rehabilitation Act by failing to provide her with reasonable accommodations, she must satisfy the Rehabilitation Act's third element by proving that she was "discriminated against by way of the defendant's failure to provide a reasonable accommodation." *McKane v. UBS Fin. Servs., Inc.*, 363 F. App'x 679, 681 (11th Cir. 2010).

"A[ student] with a disability is not entitled to the accommodation of h[er] choice, but only to a reasonable accommodation." *Id.* The duty to provide a reasonable accommodation arises when "a specific demand for an accommodation has been made." *Alvarez v. Sch. Bd. of Broward Cty.*, 208 F. Supp. 3d 1281, 1287 (S.D. Fla. 2016) (citing *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999)). When such a demand is made, "a school's decision about accommodations will be upheld unless it is plainly not based on professional judgment." *Forbes v. St. Thomas Univ., Inc.*, 768 F. Supp. 2d 1222, 1231 (S.D. Fla. 2010).

Defendant did not refuse to accommodate Doe's needs in a way that amounted to disability discrimination under the Rehabilitation Act. The record does not demonstrate that Doe ever made "a specific demand for an accommodation" so to trigger Defendant's Rehabilitation Act duties. *Alvarez*, 208 F. Supp. 3d at 1287 (citation omitted). Liberally construing Doe's one-paragraph response to Defendant's Motion related to the Rehabilitation Act, Doe argues that Defendant discriminated against her by telling Doe (1) that she must directly request accommodations from professors and (2) that she did not qualify for disability accommodations with Defendant's ODS. These are not specific demands. Even so, a reasonable jury could not find that Defendant's accommodations were unreasonable when Defendant gave Doe several opportunities to complete

her coursework and to improve her grades up until as late as May 2017 (two years after her on-time graduation) and recommended that Doe seek therapy. *See J.A.M.*, 646 F. App'x at 927 (affirming district court's dismissal of plaintiff's Rehabilitation Act claim where university defendant "allowed [plaintiff] to take two medical leaves of absence, retake examinations, and even referred him to professionals for treatment"). Accordingly, Doe's Rehabilitation Act claim fails as a matter of law.

IV.   **CONCLUSION**

Based on the foregoing, it is **ORDERED AND ADJUDGED** that:

1. Plaintiff's Motion for Partial Summary Judgment [ECF No. 71] shall be **DENIED**;
2. Defendant's Motion for Final Summary Judgment [ECF No. 75] shall be **GRANTED**;
3. All pending motions shall be **denied as moot**;
4. This case shall be **administratively CLOSED**; and
5. Pursuant to Federal Rule of Civil Procedure 58, **final judgment shall be entered separately.**

**DONE AND ORDERED** in Chambers at Miami, Florida, this 5th day of March, 2020.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE